PENNSYLVANIA CO. v. WHITNEY.

(Circuit Court of Appeals, Sixth Circuit. May 11, 1909.)

No. 1,841.

1. TRIAL (§ 83*)—OBJECTIONS TO EVIDENCE—SUFFICIENCY.

An objection to evidence, the ground of which is not stated, is fatally defective.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 198; Dec. Dig. § 83.*]

2. EVIDENCE (§ 539*)—EXPERT WITNESSES—COMPETENCY.

Where a witness testified that he had had 25 years' experience as a brakeman and conductor on the E. Railroad, that he was familiar with railroading and the operation of engines, and also with the kind of engines used by defendant company, and knew of no particular in which they differed from the E. engines, his competency to testify as an expert concerning the operation of defendant's engines was sufficiently shown.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2349; Dec. Dig. § 539.*]

3. APPEAL AND ERROR (§ 1048*)—EVIDENCE—PREJUDICE.

In an action for injuries to a railroad employé, defendant was not prejudiced by the allowance of a question asked of an expert witness

which failed to take into account a condition of the track, the only tendency of which could have been to show the necessity of greater diligence in the operation of defendant's engines.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4140; Dec. Dig. § 1048.*]

4. APPEAL AND ERROR (§ 1046*)—HARMLESS ERROR—REMARKS OF COURT.
Where, in an action for injuries to a railroad employé, after a question had been asked of an expert and the court asked whether an up or down grade of 10 per cent. was meant, plaintiff's counsel expressly disclaimed knowledge of the per cent. of the grade, and put the question again, assuming the engines to be going "slightly downgrade," defendant was not prejudiced by the court's query as assuming a percentage grade.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4134; Dec. Dig. § 1046.*]

5. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—EVIDENCE.
In an action for injuries to a servant by being thrown from the cab of his engine onto an adjoining track, where he was struck by another car, evidence *held* insufficient to require a judgment for defendant on the theory that the manner in which plaintiff claimed he was hurt was contrary to natural laws.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 950; Dec. Dig. § 276.*]

6. TRIAL (§ 191*)—INSTRUCTIONS—ASSUMED FACTS.
In an action for injuries to a railroad fireman by being thrown from the cab of his engine, an instruction that, if the accident happened in consequence of plaintiff leaving his engine by a voluntary movement not induced or caused by the shock or jolt of the preceding engine leaving the track, he could not recover, but that if he left the engine in consequence of the shock or jolt, being himself in the exercise of due care, defendant would be liable if negligent, was not objectionable as assuming a fact in dispute, viz., that there was a shock or jolt to the engine.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 430; Dec. Dig. § 191.*]

7. TRIAL (§ 281*)—INSTRUCTIONS—EXCEPTIONS.
An exception, "We except generally to the charge," is insufficient if the charge contains any correct proposition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 694; Dec. Dig. § 281.*]

8. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—VARIANCE.
In an action for injuries to a servant, defendant's evidence was that plaintiff voluntarily left his engine and went on the track, where he was struck. This evidence presented a variance from the case pleaded by plaintiff, but the question of variance was not raised by a request to charge nor specifically by motion to direct a verdict, whereupon the court charged that, if the accident happened by plaintiff leaving his engine by a voluntary movement not induced or caused by the shock or jolt of the preceding engine leaving the track, he could not recover, but that he could recover if he was not negligent and left the engine in consequence of such shock or jolt. *Held*, that such charge was not erroneous as permitting a recovery on evidence constituting a variance, there being no claim that defendant was misled thereby.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1133; Dec. Dig. § 291.*]

9. PLEADING (§ 237*)—VARIANCE—AMENDMENT.
In an action for injuries to a railroad fireman, defendant introduced evidence that plaintiff voluntarily left his engine and went to the place where he was injured. The court charged that if the accident happened by plaintiff leaving his engine voluntarily he could not recover, but if he

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

left in consequence of a shock or jolt and defendant was negligent, plaintiff could recover. *Held,* that if the latter portion of the charge had been excepted to, because of an alleged variance with the petition, an amendment to the petition to meet the proofs would have been permissible.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 603; Dec. Dig. § 237.*] ·

In Error to the Circuit Court of the United States for the Northern District of Ohio.

W. B. Sanders, for plaintiff in error.

D. F. Anderson, for defendant in error.

Before LURTON and WARRINGTON, Circuit Judges, and KNAPPEN, District Judge.

KNAPPEN, District Judge. The defendant in error (hereafter called the plaintiff) sued to recover damages on account of injuries suffered by him while in the service of the defendant as a locomotive fireman, under these circumstances: A heavy freight train, made up at Ashtabula Harbor and bound ·south, pulled by one engine, required additional power to take the train to the summit of Munson's Hill, several miles south of Ashtabula Harbor. Accordingly, two freight engines were attached to the rear of the train for the purpose of pushing it, the caboose being in the rear of the two pushing engines. The plaintiff was fireman upon the second of the pushing engines. At or near the summit of Munson's Hill was a switch connecting with a side track, extending about 286 feet to the south and lying to the east of· and (beyond the limit of the necessary curve) parallel with the main track. At the terminus of the switch track there were no bumpers, the ground being at that point considerably depressed. The disconnecting of the engines from the train at Munson's Hill, and the connecting of the caboose to the train, were accomplished by means of a flying switch, the engines (with the caboose in the rear) being detached from the train and stopped a short distance before reaching the switch points, the switch being thrown (after the train had passed onto the main track) so as to allow the engines to pass onto the side track, and the caboose during the forward movement of the engines being detached therefrom and its speed so checked as ·to permit the throwing of the switch after the passage of the engines upon the side track and before the caboose reached the switch points. The switch on this occasion was thrown by· the fireman of the·forward pushing engine. After the engines had passed some distance down the side track, and when parallel with the main track, the plaintiff in some way left his engine and was thrown or went upon the main track, in front of the caboose, and was injured. The testimony showed that the forward one of the two engines ran off the end of the switch track, dropping into the depression mentioned. The plaintiff contended that by the shock so communicated to the rear engine (which was coupled to the forward engine) he was thrown from his engine onto the main track without fault on his part. The defendant contended that the plaintiff voluntarily and negligently, and without reason there-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for, jumped from his engine, alighted upon his feet, and deliberately walked upon the main track in front of the approaching caboose.

It was the plaintiff's claim, as submitted to the jury, that both the conductor of the train and the engineer of plaintiff's engine were negligent in causing this flying switch to be made with two locomotives coupled together and on so short a switch track, and under the conditions then existing, which rendered it difficult to check the engines before reaching the end of the track. There was a verdict for the plaintiff, judgment was entered thereon, and motion for new trial denied. But three propositions are discussed in the brief of the plaintiff in error, no other questions being properly raised upon the record.

1. The plaintiff testified that, at the time the caboose was cut off, the pushing engines were going about 12 miles an hour. The witness Price testified that it would require 80 or 90 feet from the point of the switch for a caboose going down the main track to clear the engines on the switch track; that the two engines and tenders coupled together measured 120 feet, and that if going slightly downgrade and at 6 miles an hour they would require their length of 120 feet in which to stop; that if going from 10 to 12 miles an hour they would require about 300 feet; and that it is more difficult to make a flying switch with two engines than with one. The record shows that this testimony was objected to, the objection overruled, and an exception taken. The ground of the objection, however, is not stated. This omission is of itself sufficient to deny a right to review. Davidson S. S. Co. v. United States, 142 Fed. 315, 316, 73 C. C. A. 425; Deering Harvester Co. v. Kelly, 103 Fed. 261, 264, 43 C. C. A. 225.

The grounds of the objection urged in this court are that Price was not shown to be competent to testify as an expert regarding Pennsylvania engines; that nothing was said in his testimony about the condition of the rail, and the fact that its being wet and slippery would have made the stop more difficult; and that the side track was referred to in the question as "slightly downgrade," in opposition to the alleged fact that it was upgrade. Passing by the consideration that the grounds of the objections were not stated, none of them urged here are well taken. The witness testified that he had had about 25 years' experience as brakeman and conductor on the Erie Road, and was familiar with railroading and the operation of engines; that he was also familiar with the kind of engines used by the Pennsylvania Company, and that he knew of no particular in which they differed from the Erie engines. He was not cross-examined. The record is entirely barren of suggestion that his competency to testify as an expert regarding the operation of Pennsylvania engines was questioned. Had it been, the objection would not have been good. When Price's examination was had, the testimony had not shown the alleged slippery condition of the tracks; but had such evidence been in, the defendant could not have been prejudiced by failure to take into account a condition whose only tendency could have been to show the necessity of greater diligence in operating the engines. There was testimony of two witnesses to the express effect that the switch point was at the summit of the grade, and that the track was slightly downgrade from the switch point. It was, therefore, proper to as-

sume such fact in the question put to the expert witness. The query of the court (when the question was put, which did not show whether the grade was up or down), whether an upgrade or a downgrade of 10 per cent. was meant, could not have been prejudicial to the defendant as an assumption on the part of the court of the percentage of grade. Defendant's counsel paid no attention to the court's question. Plaintiff's counsel at once expressly disclaimed knowledge of the per cent. of grade, and the question was put again, assuming the engines to be going "slightly downgrade." The fact that it requires more room, or requires a greater length of side track, to make a flying switch with two engines than with one, is too obvious to justify objection to proof thereof.

2. At the close of the testimony the defendant moved the court to instruct the jury to return a verdict for the defendant, which motion was denied. The record does not state the grounds of the motion, and it is urged that plaintiff in error is for this reason not entitled to a review of the action of the trial court. There is respectable authority sustaining this proposition. In the view we take of the case, and inasmuch as there is nothing to indicate that the trial court did not understand the grounds of the motion, we do not feel called upon to pass upon the legal proposition invoked. It is here urged that the court should have directed a verdict for the defendant because the plaintiff's testimony as to the manner in which the accident occurred is contrary to physical and natural laws, and that there is no substantial testimony tending to show that the injury occurred through defendant's negligence; but, on the other hand, that the testimony that the injury occurred through plaintiff's negligence is undisputed. The rule is well settled that to sustain a verdict a mere scintilla of evidence is not sufficient, but that the testimony in support of a verdict must be substantial. It is also well settled that testimony contrary to reason, or contrary to natural or physical laws, cannot support a verdict.

Is the manner of the accident, as alleged by the plaintiff, opposed to natural laws? The plaintiff testified that, at the time the engine went off the end of the track, he was standing in the gangway between the engine and the tender, on the right or engineer's side, "leaning against the partition" (by which we understand him to mean either the front wall of the tender or the rear wall of the cab), facing and talking to the engineer; that by the jolt of the engine as it left the track he was thrown to the right and directly upon the main track, striking upon the back of his head. There was medical testimony of an injury to the back of his head. It is urged by defendant that the drop of the forward engine off the end of the rails could not have thrown plaintiff to the right, but must inevitably have thrown him forward. It is, to our minds, impossible upon this record to demonstrate to a certainty just what effect the action of the engine would have had upon the direction in which the plaintiff would be thrown. The record shows, however, that the west rail of the switch track (which was about 8 feet from the east rail of the main track) was from 10 to 15 feet shorter than the east rail of the switch track. This being so, the right-hand side of the engine would naturally drop first, with a tendency

to tilt the forward engine toward the main track. If, as the testimony tends to show, the engines were moving at a rate of five to seven miles per hour, there is a not unreasonable possibility that the shock communicated to the rear engine (which was coupled to the forward engine), occasioned by the dropping of the forward engine into a depression of several feet, might throw the plaintiff forcibly in the direction of the tilting of the forward engine, and thus upon the main track. We, therefore, cannot say that the plaintiff's testimony is contrary to physical laws. It is true that, as against the testimony of the plaintiff, three trainmen testified that the plaintiff voluntarily stepped from the engine, walked deliberately onto the main track, and there stood with his back to the approaching caboose, paying no attention to the warning shouts of the trainmen, and in this attitude was run over. The weight of this testimony was for the jury to determine, in connection with plaintiff's testimony and the question of the naturalness or unnaturalness of such conduct on plaintiff's part. In our opinion, the court did not err in refusing to instruct a verdict for the defendant.

3. The court charged the jury that if the accident happened in consequence of the plaintiff leaving his engine by a voluntary movement, not induced or caused by the shock or jolt of the front engine leaving the track, he could not recover; but if, on the other hand, he left the engine in consequence of the shock or jolt, being himself in the exercise of due care, the defendant would be liable, provided it was negligent. The court refused defendant's request to charge that "if the jury find that the plaintiff voluntarily left the engine upon which he was riding, and stepped in front of the oncoming caboose, then the plaintiff cannot recover in this action." The instruction given is criticised: First, as assuming that there was a shock or jolt to the engine, instead of leaving that question to the jury; and, second, as in effect instructing the jury that if the plaintiff left the engine by inducement of fear or impending danger, and was subsequently injured, he could recover. The charge, taken together, is not subject to the criticism that it assumes a fact in dispute. The ground of the second criticism to the charge given is not that the plaintiff could not recover if he voluntarily left the engine through fear of impending danger caused by the shock or jolt to the engine on which he was riding, but merely that such theory was not contained in plaintiff's petition, and that therefore such issue presented a variance from plaintiff's pleading. It is true that such theory does vary from that set forth by the plaintiff in his petition. The testimony, however, that the plaintiff voluntarily left the engine was introduced by the defendant. The question of variance was not raised by request to charge, nor (specifically) by motion to direct a verdict. The charge given was not excepted to, unless by exception No. 5, viz., "We except generally to the charge." This is not a sufficient exception to a charge containing any correct proposition. Anthony v. Louisville & Nashville R. R. Co., 132 U. S. 172, 10 Sup. Ct. 53, 33 L. Ed. 301; Allis v. United States, 155 U. S. 117, 122, 15 Sup. Ct. 36, 39 L. Ed. 91; Cunningham v. Underwood, 116 Fed. 803, 812, 53 C. C. A. 99; Hindman v. First Nat. Bank, 112

169 F.—37

Fed. 931, 934, 50 C. C. A. 623, 57 L. R. A. 108. The alleged variance could not have misled the defendant, and no variance between pleadings and proofs offered is material unless of a character to mislead the opposite party (Grayson v. Lynch, 163 U. S. 468, 16 Sup. Ct. 1064, 41 L. Ed. 230; Baltimore & Potomac R. R. Co. v. Cumberland, 176 U. S. 232, 238, 20 Sup. Ct. 380, 44 L. Ed. 447; Schiffer v. Anderson, 146 Fed. 457, 459, 76 C. C. A. 667); and, had the portion of the charge in question been excepted to because of the alleged variance, an amendment to the petition to meet the proofs would have been permissible (Freund v. Greene & Sons [C. C.] 139 Fed. 703; Flint & P. M. Ry. Co. v. McPherson, 105 Fed. 210, 44 C. C. A. 449). It follows from what has been said that the defendant's request referred to was properly refused.

We find no error in the record, and the judgment of the Circuit Court is accordingly affirmed.