LOUISVILLE & N. R. CO. v. WENE.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1913.)

No. 1,914.

**1.** MASTER AND SERVANT (§ 228*)—DEATH OF SERVANT—RAILROADS—EMPLOYER'S LIABILITY ACT—CONTRIBUTORY NEGLIGENCE.

Under Federal Employer's Liability Act, April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), providing that contributory negligence shall not bar recovery, but shall be considered in abatement of recovery in accordance with the degree thereof, the fact that an employé's negligence is equal to or greater than that of the railroad company will not bar a recovery of any damages.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. § 228.*]

**2. MASTER AND SERVANT (§ 247\*)—DEATH OF SERVANT—PROXIMATE CAUSE.**

Decedent, a conductor of a freight train, whose duty it was to take a switch and see that the switch was closed after his train in order that a following passenger train might pass, left the duty of closing the switch to his rear flagman, who failed to do so. As the passenger train approached, however, the engineer, if he had looked, could have discovered that the switch was open a distance amply sufficient to have enabled him to stop the train, but he failed to discover the open switch until after he had run into it, when he collided with the freight train, and caused decedent's death. *Held*, that the engineer's negligence in failing to discover the open switch, and not the negligence of decedent, was the proximate cause of his death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 795–800; Dec. Dig. § 247.\*]

**3. NEGLIGENCE (§ 101\*)—DEATH OF SERVANT—RAILROADS—EMPLOYER'S LIABILITY ACT—CONTRIBUTORY NEGLIGENCE—DEGREE—ABATEMENT OF DAMAGES.**

Where, in an action for death of a railroad freight conductor in a collision with a following passenger train on a switch under Federal Employer's Liability Act, April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), providing that contributory negligence shall not be a defense, but may be considered in reduction of damages, it appeared that decedent was negligent in failing to see that the switch was closed after his train had passed thereon, while the engineer of the following train was also negligent in failing to discover that the switch was open in time to have stopped his train, the court properly charged that decedent was guilty of contributory negligence, and that, after the jury had found the amount of damages to which the decedent's next of kin would be entitled in the absence of decedent's contributory negligence, they should abate that sum by the amount they should find represented decedent's proportionate contributory negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164; Dec. Dig. § 101.\*]

In Error to the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Action by Mattie I. Wene, as administratrix of the estate of William Wene, deceased, against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

On October 8, 1908, at about 4:40 o'clock p. m., the decedent of defendant in error (the latter being herein termed "plaintiff") was killed at Mt. Vernon, Ill., by the collision of passenger train No. 52 of plaintiff in error (herein entitled "defendant") with its freight train known as No. 72 of which the plaintiff's decedent was conductor, while the freight train was standing upon a side track, under the following circumstances: The freight train, under the care of plaintiff's decedent, was run onto the switch track in order to permit No. 52 to pass upon the main track. Rule 117 of defendant railroad reads:

"Conductors will be held responsible for the proper adjustment of the switches used by them and their trainmen, except where switch tenders are stationed. Whoever opens a switch shall remain at it until it is closed, unless relieved by some other competent employé."

Under said rules of the company, the decedent, as conductor of No. 72, was required to close the switch leading onto the side track, or to see that it was closed. For some reason, the switch was not closed. While the conductor of No. 72 was in general charge of the closing of the switch, yet the duty nevertheless immediately devolved upon the rear flagman of No. 72; he being under the direction of the conductor. Both of these, together with

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the brakeman and other train porters, receive their instructions from the master of trains. Each and all of these were hired by the company, and were charged with the duty of looking out for the safety of trains and their contents, without regard to the special duty cast on the conductors and others in express language; so that, at the time of the accident, the decedent left the duty of closing the switch to the rear flagman, as was usual, while he was himself engaged on other train duties.

Shortly after the freight train No. 72 had come to rest, at a distance of about 235 feet beyond the switch, and while decedent was seated within the caboose, at the rear of No. 72, train No. 52 came along at the rate of 18 or 20 miles an hour. At that time the switch was open, and that fact would have been apparent to the engineer of No. 52, if he had been on the lookout, at a distance of 850 feet back from the switch. The evening was "bright and beautiful." The switch target or semaphore showed red, and indicated plainly that the switch was open; the track being straight.

Both trains were within the limits of said city of Mt. Vernon. By ordinance, the city had provided that no train should pass through the city at a speed greater than ten miles per hour. The train No. 52 was coming up a quite heavy grade. Its engineer appeared to be looking straight up the track and paid no attention to the signals at the switch. At no time was the steam cut off, until the engine and train had taken the switch, run on the siding, and struck the caboose. Plaintiff's decedent was almost immediately killed. There is evidence to show that the engineer of No. 52 could have seen the switch itself at a distance of 200 feet, without looking at the signals.

Letters of administration were duly granted to plaintiff, who brought suit in the superior court of Vanderburgh county, Ind., on October 19, 1909, for $10.000. The complaint sets out the above facts substantially, that decedent was aged 42 years at the time of his death, and that he left him surviving a widow and four children, all dependent upon him, and charges that decedent's death was caused by the negligence of the flagman of train No. 72 in failing to close said switch, and that of the engineer of train No. 52 in failing to obey the switch signal and said speed ordinance. It further sets out that defendant was at the time of the accident, and is, a common carrier, and subject to the provisions of the act of Congress entitled "An act relating to the liability of common carriers by railroads to their employés in certain cases," approved and in full force April 22, 1908.

Afterwards such proceedings were had that said cause was removed to the Circuit Court of the United States, and amended in matters not here important. Defendant filed the general issue and a plea setting up the two-year limitation act provided in cases of this character. A trial was had before a jury. At the close of all the evidence, defendant moved the court to instruct the jury to find for the defendant, which motion was denied. Defendant thereupon moved the court to instruct the jury that if they found from the evidence that it was the duty of plaintiff's decedent to close the switch, and that he, knowing it to be his duty, failed to close it, such failure was the proximate cause of his death, and in such case plaintiff could not recover. It also asked the court to instruct the jury that if both defendant and plaintiff's decedent were found, from the evidence, to be guilty of negligence which caused the death, they "should consider the proportion in which William Wene and the railroad company were negligent, and assess the damages as above stated. But if you find that the contributory negligence of William Wene was equal to or greater than the negligence of the railroad company in producing his injuries, then, and in that event, your verdict cannot be more than nominal damages for the plaintiff." All of which motions were denied.

The court then instructed the jury that they were the sole judges of the facts, and were not to be swayed by his opinion of the evidence; that in his opinion the evidence established the negligence of the defendant, and the contributory negligence of decedent; that decedent and the flagman and the engineer of No. 52 were all negligent, and thereupon read to them the statute in such case provided, which reads:

"Every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative for the benefit of the surviving widow or husband and children of such employé, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier. * * * That in all actions hereafter brought against any such common carrier by railroad, under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employé, or where such injuries have resulted in his death, the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé."

The court further said to the jury:

"The fact is that Wene was guilty of contributory negligence. In other words, it was his duty to see to it that the switch was closed, and inasmuch as he did not see to it, and that fact contributed to his death, he was guilty of contributory negligence. In that case you shall not find a verdict for the defendant, but the damages which you shall determine is the amount of loss to the personal representative for the benefit of the surviving widow and children diminished by you, lessened by you, in proportion to the amount of negligence attributable to such employé. * * * You should determine what amount will compensate this widow and children for this loss; that is to say, pecuniarily compensate the widow and children for their loss. Having determined what amount will compensate them, you will then take into consideration this question of comparative negligence and reduce it."

Thereupon a verdict was rendered for $7,500, upon which judgment was entered, and this writ of error sued out. The errors assigned are:

That the court erred in not taking the case from the jury at the close of all the evidence.

That the court erred in refusing to instruct the jury that if they found from the preponderance of the evidence that by the rule of the company it was the duty of decedent to see to the closing of the switch, that he knew that fact and failed to obey the rule, and his failure to obey was the proximate cause of his own death, plaintiff could not recover.

That the court erred in refusing to instruct the jury that if they found the defendant guilty and also found plaintiff guilty of contributory negligence, and should find that the contributory negligence of plaintiff was equal to or greater than the negligence of defendant in the premises, then they should render a verdict for only nominal damages.

· That the court erred in instructing the jury that they might, if they found defendant guilty, assess the amount which the evidence showed the widow and children had sustained, and then diminish that amount in proportion to the amount of negligence attributable to such decedent; that is, having ascertained the damages, then take into consideration the question of comparative negligence, if any, and reduce the amount of damages accordingly.

That the court erred in refusing to instruct the jury that leaving the switch open was the proximate cause of the injury, and that, decedent being responsible therefor, no recovery could be had. Further facts are set out in the opinion.

Philip W. Frey and George R. De Bruler, both of Evansville, Ind., for plaintiff in error.

Frank H. Hatfield, of Evansville, Ind., G. Gale Gilbert, of Chicago, Ill., G. V. Menzies, of Mt. Vernon, Ind., and J. R. Brill, of Evansville, Ind., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above).   [1] It is conceded that defendant was engaged in interstate commerce and subject to the provisions of the so-called Federal Employer's Liability Act of April 22, 1908.

In its brief, at page 19, defendant says:

"The question at bar raised by the various assignments of error may with propriety be grouped into almost a single legal question, although presented in different forms.  Can a plaintiff injured, being himself the offending and negligent factor, his negligence being the proximate cause of the injury, recover against his master for his injury? ˙ Or, stating the proposition more favorably to the defendant in error, where, under the Federal Employer's Liability Act * * * an employé is injured through his own negligence and that of the railroad company, his employer, and where the negligence of the employé is ˙equal to or greater than that of the railroad company, may the employé under said act recover at all?"

[2] The material evidentiary facts are not contested.  By the foregoing, it will be seen that defendant insists that these show the proximate cause of the accident to have been the open switch.  Yet this would have been innocuous had the defendant's engineer observed ˙the signal at· the switch.  On an upgrade, and even while running at a speed of 18 or 20 miles an hour under a city ordinance which limited the train's speed to 10 miles an hour, there can be no question of the engineer's ability, in the exercise of reasonable diligence, to have stopped his train between the point in the track from which the open switch ·signal became observable (and when he was in duty bound, under the circumstances of the occasion, to have seen it) and the switch. Clearly, the engineer's negligence was later and quite as apparent as was the decedent's.

In Pittsburgh, etc., Co. v..Sudhoff, 173 Ind. 314, 90 N. E. 467, under substantially the same state of facts as here, it was held that the act of a brakeman in failing to close the switch could not be held to be the proximate cause, while it has been held in a number of cases that where the facts relating to proximate cause are undisputed and but one conclusion can be deduced therefrom, that question becomes a matter of law to be determined by the court.  Pittsburgh, etc., Co. v. Sudhoff, supra, and cases cited.  We do not, however, consider that rule of law controlling here.

[3] The court by its instruction held that the evidence showed that the defendant was guilty of negligence, which made it liable for damages to the next of kin for causing decedent's death.  In this the jury concurred.  It also held, the jury concurring, that decedent was guilty of contributory negligence, and the court thereupon held that, to the degree in which such contributory negligence contributed to the injury, the liability of defendant should be abated.  Thus the amount of damages to the next of kin, for which defendant should be held in the first instance, and the amount thereof which should be abated by reason of decedent's contributory negligence, were the only matters left for the jury to pass upon.  The question as submitted was not as to the proximate cause, but as to the degree of negligence of the respective parties.  Manifestly, to give effect to the act, it is essential that the relative amounts of damages caused by the negligence of the

respective parties should be declared, and we know of no fairer method than that followed by the trial judge in this case.

We said, in Grand Trunk Western Railway Co. v. Lindsay, 201 Fed. 836, handed down at the present term of the court:

"If, under the Employer's Liability Act, plaintiff's negligence contributing with defendant's negligence to the production of the injury, does not defeat the cause of action, but only lessens the damages, and if the cause of action is established by showing that the injury resulted in whole or in part from defendant's negligence, the statute would be nullified by calling plaintiff's act the proximate cause and then defeating him, when he could not be defeated by calling his act contributory negligence. For his act was the same act by whatever name it be called. It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act."

That he was not required to and did not instruct as to proximate cause, did not work any injury to defendant, as we read the undisputed evidence; and the errors based upon that point are held to be not well assigned. The construction of this act asked for by defendant, viz., that, if the jury should find from the evidence that the negligence of plaintiff equaled or exceeded that of defendant, then they could assess no damages against defendant, is not deemed by us to be the proper construction of the act. While the question is one of first impression, we are satisfied that the construction placed on the act by the trial court was the proper one. It accords with the remedial spirit of the act. The jury, having found that plaintiff was guilty of contributory negligence, were at liberty, within the evidence, to find that the contributory negligence contributed any proportion of the damages, even to substantially all thereof, if justified by the evidence. In the present case they rendered a verdict for $2,500 less than the maximum statutory amount, and that action may well imply that they made due allowance for any offset defendant was entitled to by reason of decedent's contributory negligence. Whether the deduction shall be made from the damages actually sustained in case they are found to exceed the statutory limit of recovery, or from the statutory maximum limit of recovery, is a question that is not presented in this record.

We discover no error in the instructions or other matters set out in the assignments of error, and the judgment of the District Court is affirmed.