172    APPELLATE COURTS OF ILLINOIS.

Kendrick v. Chicago & Eastern Illinois R. Co., 188 Ill. App. 172.

### James Kendrick, Administrator, Appellee, v. Chicago & Eastern Illinois Railroad Company, Appellant.

1. MASTER AND SERVANT, § 98*—*power of State courts to construe Federal Employers' Liability Act.* Since the Federal Employers' Liability Act supersedes State laws covering the same field, the courts of this State must be governed by the construction placed on the Act by the Federal courts.

2. MASTER AND SERVANT, § 302a*—*Federal Employers' Liability Act construed as to defense of assumption of risk.* Section 4 of the Federal Employers' Liability Act excludes the defense of assumed risk only when the employers' violation of a statute enacted for the safety of employees contribtued to the injury or death.

3. MASTER AND SERVANT, § 430*—*effect of provision as to defense of contributory negligence in Federal Employers' Liability Act.* Though by virtue of section 3 of the Federal Employers' Liability Act contributory negligence is no bar to an action for the death or injury to an employee, there can be no recovery under the act in cases where the employer was guilty of no negligence contributing to the injury or death within the meaning of such section or where the employee assumed the risk.

4. MASTER AND SERVANT, § 689*—*when recovery for death of engineer not warranted under Federal Employers' Liability Act.* In an action under the Federal Employer's Liability Act to recover for the death of an engineer resulting from a derailment of his engine alleged to have been caused by negligence of the railroad company in permitting its track to become defective and dangerous at a certain point, where the facts showed he was given orders to slow down at such point to ten miles per hour and that he violated the order by running at forty-five miles per hour, *held* that a recovery for plaintiff could not be sustained for the reason that the deceased assumed the risk of the reckless violation of the order, it appearing that the track would have been reasonably safe had the deceased not violated the order.

Appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the October term, 1913. Reversed with finding of facts. Opinion filed May 15, 1914.

H. M. STEELY and H. M. STEELY, JR., for appellant.

THOMAS A. GRAHAM, for appellee; J. M. BOYLE, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Justice Eldredge delivered the opinion of the court.

Appellant appeals from the judgment of the Circuit Court rendered against it in favor of appellee in the sum of $8,000, in an action on the case for damages resulting from the death of appellee's intestate. The action is based upon the Act of Congress of April 22, 1908, as amended April 25, 1910, entitled "An Act Relating to the Liability of Common Carriers by Railroad to their Employees in Certain Cases," commonly called Federal Employers' Liability Act. The cause was tried upon three counts of the declaration, which are all practically the same, and aver, in substance, that appellant was a common carrier engaged in interstate commerce and set out certain sections of said Act, and further allege that the deceased, John Kendrick, was employed by the defendant in the capacity of a locomotive engineer running an engine and train known as the "Dixie Flyer" from Chicago to Danville, Illinois, and that he was then and there engaged in interstate traffic over the lines of railroad owned and leased by appellant; that it was the duty of the defendant to use reasonable care and diligence to furnish deceased a reasonably safe track and roadbed over which to operate said engine and train; that appellant, not regarding its duty, negligently permitted the southbound track to become defective and dangerous at a point, to-wit, one mile north of Martinton over which deceased was compelled to pass with said train, in this, that said roadbed was insufficiently ballasted, the ties thereof became and were loose, insecure, rotten, worn and out of repair, and was then and there extra hazardous and dangerous for trains to pass over the same, all of which appellant then and there knew, and of which extra hazards and dangers deceased did not know, and could not have known by the exercise of reasonable diligence; that while running said train towards the south on said track the tender of the engine jumped the track and threw the

174    Appellate Courts of Illinois.

Kendrick v. Chicago & Eastern Illinois R. Co., 188 Ill. App. 172.

engine therefrom, causing the engine to turn over and upon deceased, by reason of which he was killed.

Appellant filed the general issue and also a special plea, the latter alleging that deceased was himself guilty of such negligence as to preclude recovery in his personal representative; that he had been notified of the dangerous condition of the track where the accident occurred and notified that in running over it he must not exceed the speed of ten miles per hour, and that after such notice and warning and order limiting speed, and with knowledge of the condition of the track, and in violation of such warning, notice and order, deceased ran his engine over such dangerous and unsafe place in the track at a speed of fifty miles per hour; that the dangerous condition in the track was only discovered two hours before the accident and that the track in its then condition was safe for an engine and train to pass over it at a speed of not exceeding ten miles per hour, but was unsafe for an engine and train to pass over it at a speed exceeding ten or fifteen miles per hour, and it was the violation of said order to run slow by the deceased which caused the accident to the train and caused the death of the plaintiff's intestate.

The sections of the Liability Act necessary to be considered are as follows:

"Section 1.   That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation, or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none,

then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier,—or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Sec. 3.   That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this Act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

"Sec. 4.   That in any action brought against any common carrier under or by virtue of any of the provisions of this Act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The evidence shows that this was a solid train running between Chicago and Jacksonville, Florida, and that it was the duty of deceased to act as engineer between Chicago and Danville, Illinois.   The train left Chicago at 9:10 P. M., and was due in Danville at 12:26 A. M.   At Yard Center, eighteen miles south of Chi-

cago, the deceased, his fireman and conductor each received the following order:

"Train Order No. A 288.

"Danville, 6-26-12.

"To C. & E. No. 95 & 25:

"Form 19.                                    Yard Center.

"Reduce speed to ten miles per hour, near Auto Block 67-3, just north of Martinton. Rough place in track.

"F. E. D.

"Made complete 8:05 p. m.                 8:05 p. m.

"By F. E. D.

"Willis, operator."

When the engine arrived at a point about half a mile north of auto signal 67-3 deceased asked the fireman if this was about where the rough place in the track was and the fireman answered that it was. At this time he was running the engine at a speed of between sixty and seventy miles per hour, and at this point he shut off the throttle and after proceeding about a quarter of a mile further he applied the air brakes. At this time the train was running about forty-five miles an hour. About ten seconds after he applied the air brakes the tender and engine left the tracks, rolled over on their sides, the whole train was wrecked and deceased lost his life.

The rough place in the track was noticed by Trainmaster Freese as he was riding over it on a local passenger train between seven and eight o'clock that evening; when the train on which he was riding reached Watseka he had said slow order sent out. A number of other engineers running both freight and passenger trains received the same order, and reduced the speed of their respective trains in compliance therewith to ten miles per hour and passed over said track in safety before the accident to the train in question. The manifest weight of the evidence is that the track at the point in question was perfectly safe for the passing of trains

running ten miles per hour. The contention of appellee is that the track being unsafe for trains passing over it at the speed of forty-five miles per hour, therefore its unsafe condition contributed to the death of deceased, and that by virtue of said Act the defense of contributory negligence and assumed risk are abrogated and appellee is entitled to recover.

It has been definitely settled that the laws of the several States, in so far as they cover the same field, are superseded by the said enactments of Congress regulating the liability of interstate railway carriers for the death or injury of their employees while engaged in interstate commerce. *Mondou v. New York, N. H. & H. R. Co.*, 223 U. S. 1. It follows, therefore, that the courts of this State must be governed by the construction placed upon said Act by the Federal courts. Section 3 provides that in all actions brought under said Act the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished in proportion to the amount of negligence contributable to such employee, provided that no such employee shall be held to have been guilty of contributory negligence in any case where the violation of any statute enacted for the safety of employees contributed to the injury or death. This section is confined wholly to the subject of contributory negligence.

Section 4 provides that in any action brought under said Act such employee shall not be held to have assumed the risks of his employment where the violation of any statute enacted for the safety of employees contributed to the injury or death. This section is confined wholly to the subject of assumed risk.

It is contended by appellee that by virtue of section 3 contributory negligence is no defense in any case brought under said Act, and that it can only be considered on the question of mitigation of damages and not even on that question when the injury resulted from a

violation of a statute enacted for the safety of employees; that if appellant was guilty of *any* negligence contributing to the death of deceased, then appellee is not barred from recovering even if deceased's contributory negligence was the proximate cause of the injury. This theory seems to be sustained by the case of *Louisville & N. R. Co. v. Wene,* 121 C. C. A. 245, 202 Fed. 887. The facts in that case show that both the plaintiff and defendant were negligent, and the negligence of defendant was not the result of the violation of any statutory duty. The court holds in that case, on the authority of *Grand Trunk Western Ry. Co. v. Lindsay,* 120 C. C. A. 166, 201 Fed. 836, that contributory negligence in such a case is no defense even though it be the proximate cause of the injury, and that it is only when the plaintiff's act is the *sole* cause that the defendant is freed from liability under the act; but an examination of the *Lindsay* case, *supra,* shows that the negligence of the employer contributing to the injury to the employee was the violation of a statutory duty in using a defective coupler, and the reasoning in that case hardly seems to be applicable to the *Wene* case, *supra.* The construction placed thereon by the Supreme Court of this State is that even if the violation of a statutory duty contributes to the injury, yet if it was not the proximate cause thereof, there can be no recovery. *Devine v. Chicago & C. River R. Co.,* 259 Ill. 449. However, assuming that the rule is as stated in the *Wene* case, was the appellant guilty of any negligence contributing to the death of deceased within the meaning and intention of section 3? The negligence charged against appellant was not the violation of any duty imposed by any statute for the safety of employees. It is unquestionably the duty of the master to furnish the servant a reasonably safe place in which to work and reasonably safe appliances with which to do that work, but the place need be only reasonably safe for the work that is to be carried on there-

in, and the appliances need be reasonably safe only for the purpose for which they are to be used. It was the duty of the deceased as engineer to operate his engine in such manner and at such speed as appellant might order and direct. It was the duty of appellant to furnish deceased with a reasonably safe track on which to operate his engine in accordance with its orders. Appellant furnished deceased with a track reasonably safe for the operation of trains thereover at a speed of ten miles an hour. Deceased was ordered to pass over it at a speed not to exceed ten miles an hour. The track was reasonably safe for the duty which the deceased was to perform. The fact that he wilfully and recklessly violated his orders and made the track unsafe for the performance of his duty cannot enlarge appellant's original duty or increase its liability. The negligence of appellant, if there was any, did not contribute to the death of deceased within the meaning and intention of section 3 of said Act.

That Congress recognized the distinction between contributory negligence and assumed risk cannot be doubted, as each subject is treated by itself in a separate section. The Act was amended in 1910, but these sections were not changed.

Turning our attention now to section 4, which deals with the subject of assumed risk, the wording therein is radically different. This section provides that in any action brought under the provisions of said Act such employee shall not be held to have assumed the risks of his employment in any case where the violation of any statute enacted for the safety of employees contributed to the injury or death of such employee. This implies that in all other cases the doctrine of assumed risk shall prevail. Under the common law as applied in Federal jurisdictions, assumed risk has always been recognized as a defense in actions for personal injuries between master and servant (*Tuttle v. Detroit, G. H. & M. Ry. Co.*, 122 U. S. 189), and it will be noted that the act only

excludes such defense when the violation of a statute enacted for the safety of employees contributed to the injury or death.  In the late decision in the case of *Central Vermont Ry. Co. v. Bethune,* 206 Fed. 868, where the consideration of this section was directly involved, the Circuit Court of Appeals of the First Circuit held that this section limited the abrogation of the doctrine of assumed risk to instances where the violation of an express statutory duty by the carrier was charged, and that such defense was applicable to an action under the statute for the death of a railroad employee engaged in interstate commerce resulting from the alleged negligence of the railroad company in constructing its tracks too close together.  The opinion reviews many decisions of Federal courts, was filed in June, 1913, and is the latest expression of said courts on the construction of section 4 that has been called to our attention.

The deceased in the case at bar was warned that the track was rough at said point and was ordered to reduce the speed of his train to ten miles an hour.  He knew of the danger arising from the roughness of the track and when he, in disobedience of his orders, negligently and recklessly approached said place at a speed of between sixty and seventy miles an hour and ran over it at a speed of forty-five miles an hour, he assumed the risk and hazard of so doing. *Homersky v. Winkle Terra Cotta Co.,* 178 Ill. 562, affirming 77 Ill. App. 42; *Illinois Cent. R. Co. v. Houck,* 72 Ill. 285.  The deceased assumed the risk of known dangers, and his knowledge of the defective condition of the track carried with it knowledge of its obvious danger. *Ross v. Chicago, R. I. & P. Ry. Co.,* 243 Ill. 440; *Elgin, J. & E. Ry. Co. v. Myers,* 226 Ill. 358; *McCormick Harvesting Mach. Co. v. Zakzewski,* 220 Ill. 522; *Chicago, B. & Q. R. Co. v. Camper,* 199 Ill. 569.

By so wilfully and recklessly violating said order in the manner shown by the evidence, the deceased not

only jeopardized his own safety and life, but the safety and life of every passenger upon the train, and of every other member of the train crew The whole train was wrecked. His action was inexcusable and from any construction of the statute involved we are unable to see how appellant can be held liable for his death.

The judgment will be reversed without remanding and with a finding of facts which the clerk is directed to embrace in the judgment herein.

*Reversed with finding of facts.*

Finding of facts. The court finds as matters of fact: First, that the negligence charged in the declaration was not the violation by appellant of any statute enacted for the safety of employees. Second, that appellant was not guilty of any negligence that contributed to the death of deceased. Third, that the cause of the death of deceased was a risk and hazard which he assumed.